

IN OPEN
**R 1 9 2021
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDREW ALEXANDER TEZNA,<br>    a/k/a N. ANDREW TEZNA<br>    a/k/a NESTOR ANDRES TEZNA<br><br>    Defendant. | No. 1:21-cr-77-CMH<br><br>Count 1: Bank Fraud (18 U.S.C. § 1344)<br><br>Forfeiture Notice |

### CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Information, unless otherwise stated:

1. ANDREW ALEXANDER TEZNA (hereinafter referred to as the "TEZNA"), resided in Leesburg, Virginia, within the Eastern District of Virginia. From January 2015 to the present, TEZNA worked as a full-time employee of the National Aeronautics and Space Administration ("NASA") who makes approximately $170,801 per year. Since June 2020, he has been a Senior Executive Service ("SES") employee.

2. TEZNA also resides with his wife, T.T., who was also a full-time government employee, and with his mother-in law, B.I. As TEZNA knew, B.I. has not had full-time employment since at least 2016.

3. C.M. was a friend of T.T., who TEZNA hired at NASA, on or about September 2019, and was thereafter a NASA employee who reported at first directly and later indirectly to TEZNA.

4. Sonabank and Celtic Bank each were banks with deposits insured by the Federal Deposit Insurance Corporation ("FDIC"). Sonabank and Celtic Bank each therefore constituted a "financial institution" for purposes of 18 U.S.C. §§ 20, 1344, and 1957. Additionally, Sonabank was a Virginia chartered bank headquartered in Tappahannock, Virginia within the Eastern District of Virginia.

*The Paycheck Protection Program*

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and was designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of billions in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

6. In order to obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The applicant of a PPP loan was required to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant had to state, among other things, the: (a) average monthly payroll expenses and (b) number of employees. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

7. A PPP loan application had to be processed by a participating financial institution (the lender). If the PPP loan application was approved, the lender funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the

loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8. PPP loan proceeds could only be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The proceeds of a PPP loan were not permitted to be used towards the purchase of a personal automobile, a dog, to pay personal credit card debt, to pay debt related to a residential pool, to pay costs associated with a Disney Vacation Club membership, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

*Unemployment Benefits*

9. Unemployment Insurance ("UI") was a joint state-federal program that was intended to provide temporary financial assistance to unemployed workers who were unemployed through no fault of their own. Each state administered a separate UI program, but all states followed the same guidelines established by federal law.

10. The Virginia Employment Commission ("VEC") was responsible for administering the unemployment compensation program in the Commonwealth of Virginia. Eligible recipients received a minimum of $158 per week in traditional UI benefits.

11. As part of the CARES Act and the Lost Wage Assistance Program ("LWA"), which included unemployment assistance that took affect after the CARES Act supplements expired, there were additions to the traditional UI benefits. Specifically, the VEC had the following UI components as a result of the CARES Act and LWA:

    a. Federal Pandemic Unemployment Compensation Program ("FPUC") – the CARES Act increased benefits for workers collecting UI by $600 per week for

claims effective March 29th through July 31st, 2020, increasing the weekly benefit to $758 per week.

b. Pandemic Unemployment Assistance ("PUA") – PUA provided unemployment benefits for individuals who did not qualify for traditional UI benefits.

c. Pandemic Emergency Unemployment Compensation ("PEUC") – the CARES Act included a provision for up to 13 weeks of regular/traditional unemployment insurance benefits to those who have exhausted their eligibility.

d. Lost Wages Assistance ("LWA") – took affect after July 31, 2020 and provided an additional $300 per week to claimants in Virginia who are eligible for at least $100 week in unemployment insurance compensation.

12. Unemployed workers in the Commonwealth of Virginia filed for UI benefits either by phone or through the VEC on-line portal. To be eligible for UI benefits, the claimants had to have been separated from their employer or had their hours reduced by their employer. Once the VEC approved the UI claim, claimants had to re-certify their unemployment status on a weekly basis. The claimant had to certify that they were ready, willing, and able to work each day during the weeks they claimed UI.

13. Applicants were only eligible to receive weekly PUA benefits if they were unemployed for reasons related to the COVID-19 pandemic. The applicant had to certify, under penalty of perjury, that they were able to go to work each day and, if offered a job, the applicant had to be able to accept it.

## Count 1
## (Bank Fraud)

14. The factual allegations contained in Paragraphs 1 through 8 of the Introductory Allegations to this Indictment are re-alleged and incorporated herein.

### Scheme and Artifice to Defraud

15. From at least in or around May 2020 and continuing through at least in or around December 2020, in the Eastern District of Virginia and elsewhere, defendant ANDREW ALEXANDER TEZNA, did knowingly devise and intend to devise a scheme and artifice to obtain the moneys, funds, credits, assets, and other property owned by, and under the custody and control of, a financial institution, namely, Sonabank and Celtic Bank, by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose and Object of the Scheme

16. It was the purpose and object of the scheme for TEZNA to fraudulently to obtain moneys, funds, credits, assets, and other property owned by, and under the custody and control of, Sonabank and Celtic Bank, namely, PPP loan proceeds, and to spend those proceeds on items that were not authorized under the PPP.

### Manner and Means of the Scheme

17. In furtherance of the scheme to defraud, and to accomplish its unlawful objects, the following manner and means were used, among others:

*The Andalasia Designs PPP Loan Application*

18. On or about May 18, 2020, TEZNA submitted and caused to be submitted a fraudulent loan application to Sonabank on behalf of Andalasia Designs. TEZNA listed T.T.'s social security number on the application and signed and certified the application as T.T. With the application TEZNA submitted a copy of T.T.'s Virginia driver's license. In this application,

TEZNA knowingly made and caused to be made numerous materially false and fraudulent representations to Sonabank. Among other things, TEZNA submitted and caused to be submitted a PPP loan application, on behalf of Andalasia Designs, in which he made all of the following materially false and fraudulent representations:

   a. TEZNA falsely claimed that Andalasia Designs had three employees with average monthly payroll expenses of at least $34,700. TEZNA knew that this was false, and that in truth and fact, Andalasia Designs had at most one employee, T.T., and Andalasia Designs had no regular monthly payroll expenses.

   b. TEZNA falsely certified that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule." TEZNA knew that this was false, and that he intended to use the PPP loan proceeds for unauthorized purposes, including paying off personally incurred debt and to pay for day-to-day living expenses.

   c. TEZNA falsely certified that "the funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under the Paycheck Protection Program Rule." TEZNA knew that this was false as he intended to use the PPP loan proceeds for unauthorized purposes.

   d. TEZNA falsely attested and certified that "the information provided in [the] application and the information provided in all supporting documents and forms is true and accurate in all material respects." TEZNA knew that this was false as he

had made numerous false statements in the PPP loan application, supporting documentation, and forms.

19. As a part of the fraudulent loan application on behalf of Andalasia Designs, TEZNA also submitted and caused to be submitted to Sonabank wholly fabricated supporting documentation including:

    e. A purported "Andalasia Designs Payroll Report" for the "Time Period: 02/15/2020 - 05/18/2020." The document listed three employees, T.T., B.I., and C.M., and listed the employees' purported weekly pay as $19,200 per week and $67,200 for the full time period. The document was a fabrication; B.I. and C.M. were not employees of Andalasia Designs, and the company had not incurred the payroll expenses listed.

    f. A purported 2019 Form 1040 Schedule C, Profit or Loss from Business ("Schedule C") which listed T.T. as the proprietor, listed T.T.'s social security number, and listed the business name of Andalasia Designs. This purported 2019 Schedule C listed "Gross receipts" of $172,810 and "Total expenses" of $51,060. The document was a fabrication; the sole Schedule C attached to TEZNA's personal tax return, Form 1040, submitted to the Internal Revenue Service did not match the Schedule C submitted to Sonabank. The 1040 filed with the IRS reported only $5,067.00 in gross receipts. However, in truth, Andalasia Designs earned gross receipts totaling only $7,260 in 2019.

20. As a result of the misrepresentations on the Andalasia Designs PPP loan application, on or about May 20, 2020, Sonabank disbursed $25,400 in PPP loan proceeds to a bank account that TEZNA had signature authority and managed.

21. TEZNA did not use the PPP loan proceeds for their intended purposes. Instead, it was further part of the scheme that once TEZNA received the PPP loan proceeds, he knowingly spent the proceeds on numerous items that he knew were not authorized under the PPP. Among other things, TEZNA knowingly spent and caused to be spent the PPP loan proceeds for the following unauthorized expenses:

    g. to pay $18,447.31 on an auto loan for a 2015 Toyota Sienna;

    h. to make a $5,727.28 payment on a personal Best Buy credit card

### *The B.I. PPP Loan*

22. On or about May 22, 2020, TEZNA submitted and caused to be submitted a fraudulent loan application to Celtic Bank on behalf of the business in the name of B.I. TEZNA listed B.I.'s social security number on the application and signed the application as B.I. With the application, TEZNA submitted a copy of B.I.'s Virginia driver's license. In this application, TEZNA knowingly made and caused to be made numerous materially false and fraudulent representations to Celtic Bank. Among other things, TEZNA submitted and caused to be submitted a PPP loan application, on behalf of the business in the name of B.I., in which he made all of the following materially false and fraudulent representations:

    a. TEZNA falsely claimed that the business in the name of B.I. was a sole proprietorship with average monthly payroll expenses of at least $29,567.50. TEZNA knew that this was false, and that in truth and fact, the business in the name of B.I. did not exist and, therefore, had no regular monthly payroll expenses.

    b. TEZNA falsely certified that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with

    the Paycheck Protection Program Rule." TEZNA knew that this was false, as he intended to use the PPP loan proceeds for unauthorized purposes, including paying off personally incurred debt and to pay for day-to-day living expenses.

  c. TEZNA falsely certified that the business "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC." TEZNA knew that this was false, and that in truth and fact, the business in the name of B.I. did not exist and did not have employees for which it paid salaries and payroll taxes.

  d. TEZNA falsely certified that "the funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under the Paycheck Protection Program Rule." TEZNA knew that this was false as he intended to use the PPP loan proceeds for unauthorized purposes.

  e. TEZNA falsely attested and certified that "the information provided in [the] application and the information provided in all supporting documents and forms is true and accurate in all material respects." TEZNA knew that this was false as he had made numerous false statements in the PPP loan application, supporting documentation, and forms.

23. As a part of the fraudulent loan application on behalf of the business in the name of B.I., TEZNA submitted and caused to be submitted to Celtic Bank a purported 2019 Form 1040 Schedule C, Profit or Loss from Business ("Schedule C") which listed B.I. as the proprietor and listed B.I.'s social security number. No business name was listed on the form. This purported 2019 Schedule C listed "Gross receipts" of $354,810 and "Total expenses" of $5,816.

The document was a fabrication: the Internal Revenue Service has no record of a 2019 Form 1040 Schedule C, Profit or Loss from Business ("Schedule C") filed for B.I.

24. As a result of the misrepresentations on the B.I. PPP loan application, on or about May 26, 2020, Celtic Bank disbursed $73,918 in PPP loan proceeds to a bank account that TEZNA had signature authority and managed.

25. TEZNA did not use the PPP loan proceeds for their intended purposes. Instead, it was further part of the scheme that once TEZNA received the PPP loan proceeds, he knowingly spent the proceeds on numerous items that he knew were not authorized under the PPP. Among other things, TEZNA knowingly spent and caused to be spent the PPP loan proceeds for the following unauthorized expenses:

    f. to pay $48,961.81 on a loan for a residential swimming pool;

    g. to pay off at least $19,700 of personal credit card debt.

*The Nestor Tezna PPP Loan*

26. On or about May 29, 2020, TEZNA submitted and caused to be submitted a fraudulent loan application to Celtic Bank on behalf of the business in the name Nestor Tezna. In this application, TEZNA knowingly made and caused to be made numerous materially false and fraudulent representations to Celtic Bank. Among other things, TEZNA submitted and caused to be submitted a PPP loan application, on behalf of the business in the name Nestor Tezna, in which TEZNA made all of the following materially false and fraudulent representations:

    h. TEZNA falsely claimed that the business in the name of Nestor Tezna was a sole proprietorship with average monthly payroll expenses of at least $69,186. TEZNA knew that this was false, and that in truth and fact, the business in the

name of Nestor Tezna did not exist and, therefore, had no regular monthly payroll expenses.

i. TEZNA falsely certified that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule." TEZNA knew that this was false, and that he intended to use the PPP loan proceeds for unauthorized purposes, including paying off personally incurred debt and to pay for day-to-day living expenses.

j. TEZNA falsely certified that the business "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC." TEZNA knew that this was false, and that in truth and fact, the business in the name of Nestor Tezna did not exist and did not have employees for which it paid salaries and payroll taxes.

k. TEZNA falsely certified that "the funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under the Paycheck Protection Program Rule." TEZNA knew that this was false, and that he intended to use the PPP loan proceeds for unauthorized purposes.

l. TEZNA falsely attested and certified that "the information provided in [the] application and the information provided in all supporting documents and forms is true and accurate in all material respects." TEZNA knew that this was false as he

had made numerous false statements in the PPP loan application, supporting documentation, and forms.

27. As a part of the fraudulent loan application on behalf of the business in the name of Nestor Tenza, TEZNA submitted and caused to be submitted to Celtic Bank a purported 2019 Form 1040 Schedule C, Profit or Loss from Business ("Schedule C") which listed Nestor Tezna as the proprietor. No business name was listed on the form. This purported 2019 Schedule C listed "Gross receipts" of $830,240 and "Total expenses" of $9,493. The document was a fabrication; the sole Schedule C attached to TEZNA's personal tax return, Form 1040, submitted to the Internal Revenue Service did not match the Schedule C submitted to Celtic Bank.

28. As a result of the misrepresentations on the Nestor Tezna PPP loan application, on or about June 4, 2020, Celtic Bank disbursed $172,966 in PPP loan proceeds to a bank account that TEZNA had signature authority and managed.

29. TEZNA did not use the PPP loan proceeds for their intended purposes. Instead, it was further part of the scheme that once TEZNA received the PPP loan proceeds, he knowingly spent the proceeds on numerous items that he knew were not authorized under the. Among other things, TEZNA knowingly spent and caused to be spent the PPP loan proceeds for the following unauthorized expenses:

    m. to pay off over $140,000.00 of existing and newly incurred personal credit card debt;

    n. to make a $6,450.00 payment to a dog breeder;

    o. to pay $4,992.81 towards a down payment for Land Rover SUV;

    p. to make a $7,200.00 payment for home improvements; and

q. to make $2,500.00 in payments to Disney Vacation Club for dues and loan payments.

## Executions

30. On or about the dates listed below, in the Eastern District of Virginia and Elsewhere,

ANDREW ALEXANDER TEZNA

defendant herein, knowingly executed and attempted to execute the above-described scheme and artifice, as described below:

| Count | Approx. Date | Appx. Loan Amount Disbursed | Summary Description |
|---|---|---|---|
| 1 | 5/18/2020 | $25,400 | submission of fraudulent PPP loan application in the name of Andalasia Designs to Sona Bank |
|  | 5/22/2020 | $73,918.00 | submission of fraudulent PPP loan application in the name of B.I. to Celtic Bank |
|  | 5/29/2020 | $172,966.00 | submission of fraudulent PPP loan application in the name of Nestor Tezna to Celtic Bank |

(In violation of Title 18, United States Code, Sections 1344(2) and 2.)

\* \* \* \* \*

## EIDL Program Conduct

31. Further, on or about May 20, 2020, in the Eastern District of Virginia and elsewhere, TEZNA submitted and caused to be submitted a fraudulent Andalasia Designs EIDL application, in the name of T.T., to the SBA seeking $63,000. Among other things, on the application TEZNA submitted and caused to be submitted, TEZNA claimed that Andalasia Design earned $157,000 in the prior twelve months. TEZNA then and there knew that

Andalasia Design earned far less than the $157,000 claimed on the EIDL Application. The SBA rejected the application and did not fund the requested EIDL advance or loan.

32. On or about June 29, 2020, in the Eastern District of Virginia and elsewhere, TEZNA submitted and caused to be submitted a second fraudulent Andalasia Designs EIDL application, in the name of T.T., to the SBA seeking $6,500. Among other things, on the application TEZNA submitted and caused to be submitted, TEZNA claimed that Andalasia Designs earned $35,000 in the prior twelve months. TEZNA then and there knew that Andalasia Design earned far less than $35,000 claimed on the EIDL Application. The SBA rejected the application and did not fund the requested EIDL advance or loan.

## Unemployment Fraud

33. On or about May 4, 2020, in the Eastern District of Virginia and elsewhere, TEZNA, in the name of B.I., submitted and caused to be submitted a fraudulent application to the VEC seeking UI and PUA benefits. The VEC application required that an applicant enter, among other things, his or her social security number and date of birth. On the instant application, TEZNA listed B.I.'s social security number and date of birth, and then submitted the application online without B.I.'s knowledge or consent. To conceal the fraud, TEZNA listed his phone number and email address instead of B.I.'s contact information. During the submission process, TEZNA certified the information presented in the application was true when he knew it was not.

34. On the application, TEZNA knowingly made and caused to be made numerous materially false and fraudulent representations to the VEC. Among other things, TEZNA submitted and caused to be submitted the application, on behalf of B.I., in which TEZNA made all of the following materially false and fraudulent representations:

a. TEZNA falsely claimed that B.I. was a self-employed nanny that was actively looking for work, and that B.I. was willing to accept any position offered by a potential employer. TEZNA knew B.I. was neither self-employed nor looking for employment as a nanny or in any other type of position.

b. TEZNA falsely claimed B.I. earned $2,000.00 per month as a self-employed nanny, that she has been a self-employed nanny since November 17, 2017, and that she was laid off on March 3, 2020. TEZNA knew this was false because TEZNA knew B.I. had no consistent employment since 2016 and was not laid off from any employer in 2020 or at any other time in the past three years.

c. TEZNA falsely claimed that B.I. was separated from employment and entitled to PUA benefits because B.I.'s employment was affected by the COVID-19 pandemic in the following ways:

   i. B.I. "...is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency."

   ii. B.I. "...is unable to reach the place of employment because the [she] has been advised by a health care provider to self-quarantine due to concerns related to COVID-19."

   iii. B.I.'s "...place of employment is closed as a direct result of the COVID-19 public health emergency."

TEZNA knew these statements were false because B.I. was never a self-employed nanny and did not seek employment outside TEZNA's home and her employment status was unaffected by any COVID-19 pandemic restrictions.

    d. TEZNA falsely attested and certified that "all of the information I have given on this application is correct..." and "I understand that Federal funds are provided and that the law provides for fines and imprisonment or both in addition to disqualification of benefits if I knowingly fail to disclose or give false information in order to obtain or increase PUA benefits to which I am not entitled." TEZNA knew that this certification was false as he had made numerous false statements in the PUA application.

35. From approximately May 4, 2020 until about October 19, 2020 the VEC disbursed 21 payments in the cumulative amount of $15,950.00 to a bank account for which TEZNA had signature authority and managed. In order to continue receiving payments, TEZNA filed weekly additional claims, and continued to perpetrate this fraud until at least in or around October 2020. After comingling the funds with the PPP loan fraud proceeds and with legitimate funds, TEZNA used the unemployment benefits for his personal enrichment.

### False Financial Disclosure

36. Due to his SES position, on or about June 23, 2020, in the Eastern District of Virginia and elsewhere, TEZNA filed an Executive Branch Personnel Public Financial Disclosure Report, OGE Form 278e with NASA. TEZNA electronically signed the form claiming it was true, complete, and correct. This form was materially false in that TENZA listed:

    a. "None" for the following three items: "4. Filer's Sources of Compensation Exceeding $5,000 in a year," "6. Other Assets and Income," and "9. Gifts and Travel Reimbursement." The OGE Form 278e was false in that TEZNA knew that C.M., another NASA employee who TEZNA indirectly supervised, was

paying TEZNA approximately $1,900.00 biweekly since November 1, 2019, and, as such, the funds received from C.M. should have been reported in the OGE Form 278e as either compensation, other assets and income, or as a gift. TEZNA received at least $46,200.00 from C.M. between August 30, 2019 and September 4, 2020.

    b. The following information in "8. Liabilities":

| # | CREDITORS NAME | TYPE OF LIABILITY | AMOUNT | YEAR INCURRED | INTEREST RATE |
|---|---|---|---|---|---|
| 1 | Bank of America | revolving | $15,001 - $50,000 | 2018 | 9 |
| 2 | Navy Federal | revolving | $15,001 - $50,000 | 2019 | 6 |
| 3 | USAA | revolving | $10,001 - $15,000 | 2019 | 6 |

This information was false in that TEZNA knew he had the following additional liabilities that he should have reported on his OGE Form 278e:

    i. An approximate revolving liability of $16,000.00 pertaining to TEZNA's credit card account with JP Morgan Chase.

    ii. An approximate revolving liability of $20,000.00 pertaining to T.T.'s credit card account with JP Morgan Chase.

## NOTICE OF FORFEITURE

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendant, ANDREW ALEXANDER TEZNA, is hereby notified that if convicted of the offense in Count 1 of the Criminal Information, he shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the violation.

The assets subject to forfeiture include, but are not limited to, the following: a monetary judgment in the amount of not less than $288,234, representing the proceeds the defendant obtained as a result of the violations described in this Criminal Information.

Pursuant to 21 U.S.C. § 853(p), ANDREW ALEXANDER TEZNA shall forfeit substitute property, if, by any act or omission of ANDREW ALEXANDER TEZNA, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(All in accordance with Title 18, United States Code, Sections 982(a)(2)(A) and Fed. R. Crim. P. 32.2.)

Respectfully submitted,

Raj Parekh
Acting United States Attorney

Date: April 19, 2021      By: _____
Kimberly M. Shartar
Jamar K. Walker
Assistant United States Attorneys